*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF EFFIE TAYLOR, by ORAS
TAYLOR, Personal Representative,

        Plaintiff-Appellee,

v

UNIVERSITY PHYSICIAN GROUP, LEGACY
SHGD, VHS SINAI GRACE HOSPITAL, INC.,
TENET HEALTHCARE CORPORATION, VHS
OF MICHIGAN, INC., VHS PHYSICIANS OF
MICHIGAN, DMC LAHSER AMBULATORY,
and DMC LAHSER CAMPUS,

        Defendants

and

FRANKLIN MEDICAL CONSULTANTS, PC,
and MANUEL SKLAR,

        Defendants-Appellants.

FOR PUBLICATION
July 25, 2019

No. 338801
Oakland Circuit Court
LC No. 2015-147003-NH

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

O'BRIEN, J. (*dissenting*).

    I respectfully dissent.

    Plaintiff's theory of causation is that after Dr. Manuel Sklar biopsied multiple AVMs during Effie Taylor's colonoscopy, the biopsy sites continued to bleed, eventually leading to Taylor's death. According to Dr. Sklar's report, the biopsies were "[j]ust proximal to the cecum" in the "ascending colon." Dr. Todd Eisner testified that the biopsies were in the "proximal ascending colon," which "would be closer to the cecum than to the hepatic flexure[.]" Three days after Dr. Sklar biopsied Taylor's colon, Taylor returned to the hospital with reports of colorectal bleeding, so Dr. Veslav Stecevic performed a second colonoscopy looking for sites with active bleeds. According to Dr. Stecevic, there was "[r]ed blood" throughout the colon. Dr.

Stecevic "washed [areas of the colon] meticulously"—including the "terminal ileum, cecum, . . . the ascending colon and . . . the hepatic flexure"—but could not find an active bleed until he reached the hepatic flexure.[1] That is, Dr. Stecevic testified that he washed and looked for an active bleed at the sites where Dr. Sklar biopsied, but could not find one.[2] Dr. Stecevic took pictures of the areas where he searched—which included pictures of the ascending colon—and those pictures are included in the lower court record. The pictures show that in the areas that Dr. Stecevic searched, he washed away the blood so that he had a clear view. Even assuming that Dr. Stecevic was mistaken about the bleed in the hepatic flexure, his testimony established that, at the time of Taylor's second colonoscopy, she was not bleeding from the areas biopsied by Dr. Sklar. If Taylor was not bleeding from the biopsy sites, plaintiff cannot establish that Dr. Sklar's biopsies caused Taylor's death, and defendants are entitled to summary disposition.[3]

Plaintiff did not offer any evidence to establish a question of fact whether Taylor was bleeding from the biopsy sites during her second colonoscopy. See MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."). Instead, Dr. Eisner testified that he believed that the biopsy sites continued to bleed because it was the most likely explanation for the blood in Taylor's colon. But it is unclear why Dr. Eisner discredited Dr. Stecevic's testimony that he searched for but could not find an active bleed at the biopsy sites. As best I can discern, Dr. Eisner did not believe that Dr. Stecevic and/or Dr. Sklar "truly knew where [they] were" in the colon during the colonoscopies because "there is not a road map in there, so sometimes we don't know exactly where we are. Sometimes it's an estimate." In other words, Dr. Eisner opined that one or both of the doctors were mistaken about where they were in the colon, so Dr. Stecevic was not looking for an active bleed in the area that Dr. Sklar biopsied. This opinion, however, has no support in fact. Neither Dr. Stecevic nor Dr. Sklar testified that they had any doubt about where they were in the colon. Thus, Dr. Eisner's testimony that they may not have "truly" known where they were because that happens "sometimes" is speculation or conjecture, which cannot create a question of fact. See *Detroit v General Motors Corp*, 233 Mich App 132, 139; 592 NW2d 732 (1998). Because plaintiff failed to establish a question of fact whether the biopsy sites were bleeding during Taylor's second colonoscopy, defendants were entitled to summary disposition.

---

[1] Dr. Stecevic explained that during a colonoscopy, a doctor begins at the back of the colon and makes his or her way towards the rectum. So the doctor begins in the terminal ileum, then works through the cecum, then the ascending colon, then the hepatic flexure, and so on.

[2] The majority emphasizes that Dr. Stecevic testified that he did not believe that Dr. Sklar biopsied any AVMs, but that does not affect that Dr. Stecevic testified that he searched for but could not find an active bleed at the sites that Dr. Sklar biopsied.

[3] Plaintiff does not offer an alternative theory of causation. Thus, even if Dr. Stecevic was wrong about the bleed coming from the diverticulum, it does not save plaintiff's claim.

-2-

Contrary to the majority's characterization of my opinion, I am viewing the evidence in the light most favorable to plaintiff. The issue—and why defendants are entitled to summary disposition—is the *lack of evidence* that the biopsy sites were bleeding at the time of Taylor's second colonoscopy.[4] Dr. Stecevic testified that he washed the areas that Dr. Sklar biopsied and looked for, but could not find, an active bleed. Dr. Stecevic provided photos of some of the areas that he washed looking for the bleed, and those photos show that he had a clear view of the areas and that there were no active bleeds. In response, plaintiff only offered Dr. Eisner's testimony that he believed that the biopsy sites were bleeding because Dr. Stecevic was not looking for an active bleed where Dr. Sklar actually biopsied. This speculation cannot create a question of fact for a jury. It is this lack of evidence in response to defendant's motion—meaning plaintiff's failure to "set forth specific facts showing that there is a genuine issue for trial," MCR 2.116(G)(4)—that entitles defendant to summary disposition.

According to the majority, plaintiff established a question for trial because a jury could "question Dr. Stecevic's power of observation."[5] That is, the majority holds that a jury could believe Dr. Eisner's testimony that Taylor was bleeding from the biopsy sites during her second

---

[4] In a similar vein, the majority claims that I "offer[]" the "conclusion" that "Taylor experienced a second, entirely coincidental (and fatal) bleed in her colon." That claim is simply wrong. I do not, nor do I need to, offer any conclusion for where Taylor was bleeding from.

[5] The majority appears to adopt the view from a concurring opinion in *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 122; 776 NW2d 114 (2009) (GLEICHER, J., concurring), that, in a motion for summary disposition, "the credibility of" a witness can "be questioned for any reason[.]" Indeed, the majority's discussion on credibility at the summary-disposition stage largely mirrors that concurrence's. See *id*. at 125-128.

That portion of the concurring opinion, however, was rejected by a majority of this Court, and both members of the majority expressed firm disagreement with it. See, e.g., *id*. at 113 (opinion of the Court) ("Specifically, I disagree with Judge GLEICHER's statement that 'the credibility of the treating physician could be questioned for any reason' . . . . Although I concur that a jury may accept or disregard testimony as the ultimate fact-finder, I do not agree that the fact-finder can ignore uncontroverted facts establishing the actual conduct or behavior of the physician."); *id*. at 117-118 (BANDSTRA, J., concurring) (opining that Judge GLEICHER's approach was "inconsistent with the usual understanding of a plaintiff's burden of proof. It would also subvert the usual summary disposition rule that protects a defendant from litigation if 'there is no genuine issue' on an element of a plaintiff's claim. MCR 2.116(C)(10). Even if the only available evidence undermines a plaintiff's claim, Judge GLEICHER would still apparently find a genuine issue arising from the possibility that the fact-finder could disbelieve that evidence."). I believe that many of the concerns expressed in Judge BANDSTRA's concurrence are particularly applicable here. See, e.g., *id*. at 119 ("[O]ur law places a burden of proof on a plaintiff seeking to recover damages. Thus, a plaintiff failing to come forward with any evidence in support of an element of a claim is properly subject to summary disposition for failing to shoulder that burden of proof. In other words, a plaintiff is penalized for failing to come forward with evidence precisely because the law imposes a burden of proof on a plaintiff.").

colonoscopy so long as it concludes that Dr. Stecevic missed an active bleed when he looked for one in the area of the biopsy sites.[6]  I fail to see how that conclusion does not violate the rule from *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 286; 602 NW2d 854 (1999), that an expert's opinion—here, Dr. Eisner's—is inadmissible if it "is inconsistent with the testimony of a witness who personally observed an event in question, and the expert is unable to reconcile his inconsistent testimony *other than by disparaging the witness' power of observation*." (Emphasis added.)

In sum, defendants presented evidence establishing that, at the time of Taylor's second colonoscopy, she did not have an active bleed in the area of the colon that Dr. Sklar biopsied.  In response, plaintiff failed to carry her burden of "showing that there is a genuine issue for trial." MCR 2.116(G)(4).  Defendants were therefore entitled to summary disposition.


/s/ Colleen A. O'Brien

---

[6] The majority also states that "[a] jury could reasonably conclude that the 'other sources' of the continued, massive bleeding [that Dr. Stecevic conceded could exist] were the sites of the Dr. Sklar's biopsies[.]"  Yet directly after Dr. Stecevic conceded that there could have been "other sources of bleeding," plaintiff's counsel asked, "Like the area that was biopsied by Dr. Sklar a few days before, right?"  To which Dr. Stecevic responded that he "cleared" the area that Dr. Sklar biopsied and there was no "bleeding in that area."